U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2013 APR -8 PM 2:09

CLERK
BY _____PC_____
        DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

DENNIS KUCERA,

    Plaintiff,

v.

MICHAEL TKAC, GLENN CUTTING,
LEONARD ROBERTS, UNKOWN POLICE
OFFICERS, and TOWN OF HARTFORD,
VERMONT,

    Defendants.

Case No. 5:12-cv-264

## OPINION AND ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS COUNT TWO AND COUNT SEVEN
(Docs. 8 & 9)

Plaintiff Dennis Kucera brings this action pursuant to 42 U.S.C. § 1983 and state law against Defendants Town of Hartford ("Hartford") and Hartford Police Officers Michael Tkac, Glenn Cutting, Leonard Roberts, and Unknown Police Officers in their individual capacities[1] (collectively, the "Defendants").

Presently before the court is the partial motion to dismiss (Doc. 9), filed by Defendants Glenn Cutting, Leonard Roberts, and Michael Tkac, and Hartford's motion to dismiss (Doc. 8). The moving Defendants seek dismissal of Count 2 of Plaintiff's Amended Complaint, filed January 2, 2013, arguing that Plaintiff has failed to adequately allege that Hartford and Officers Cutting and Roberts implemented or furthered policies, customs, and practices, constituting deliberate indifference to Plaintiff's rights or

---

[1] Plaintiff initially also brought suit against Officers Tkac, Cutting, and Roberts in their official capacities. Plaintiff has withdrawn those claims as duplicative of his claims against Hartford. *See Escobar v. City of New York*, 2007 WL 1827414, at *3 (E.D.N.Y. June 25, 2007) ("A suit for damages against a municipal officer *in their official capacity* is the equivalent of a damage suit against the municipality itself."). In response to the motion to dismiss, Plaintiff also dismissed his claims brought against Officers Tkac, Cutting, and Roberts under the Fifth and Eighth Amendments.

otherwise failed to adequately supervise members of the Hartford Police Department.[2] Additionally, Hartford seeks dismissal of Plaintiff's state law negligence claim set forth in Count 7 of the Amended Complaint, arguing that it is entitled to municipal immunity. The parties waived oral argument.

Plaintiff is represented by Christopher A. Dall, Esq. Defendants are represented by Joseph A. Farnham, Esq. and Nancy G. Sheahan, Esq.

I.  **Factual Allegations.**

In his Amended Complaint, Plaintiff alleges that on September 10, 2010, Officers John Adams, Christopher O'Keefe, and Stewart Rogers, of the Hartford Police Department, responded to a report of domestic assault at the Shady Lawn Motel. The disturbance was reported in Room 230, but upon their arrival and discovery that there was no Room 230, the officers determined that the report had originated from Room 130. The door to Room 130 was open, and Plaintiff and his roommate, Monica Therrien, were present.

Suspecting that Ms. Therrien was intoxicated, the officers asked her to submit to a preliminary breath test, which indicated that she had a breath alcohol content of .287%.[3] Ms. Therrien told Officer O'Keefe that Plaintiff had pushed her against a wall, causing pain; however, despite Ms. Therrien's attempts to show the officers her injuries, they observed no injuries except for a bruise that Ms. Therrien admitted she had inflicted upon herself. Plaintiff spoke with Officer Adams and denied grabbing, restraining, or assaulting Ms. Therrien. Plaintiff informed Officer Adams that Ms. Therrien had been drinking in a different location, had returned upset, and had begun to throw objects around the motel room.

---

[2] While Officer Michael Tkac is listed as one of the moving defendants, the arguments advanced by Defendants that Plaintiff has failed to state a claim in Count 2 against Officers Cutting and Roberts for supervisory liability do not pertain to Officer Tkac.

[3] Later, when she was tested at the hospital, Ms. Therrien's blood alcohol content was allegedly .480%.

2

At some point during the interaction on September 10, 2010, Ms. Therrien allegedly became involved in a physical altercation with Officer Adams, and she was transported to Dartmouth Hitchcock Medical Center ("DHMC"). Prior to leaving the Shady Lawn Motel, the officers discussed filing charges, but ultimately did not arrest Plaintiff or issue him a citation. One officer purportedly stated, "I don't even have enough for a domestic. If anything, she [Ms. Therrien] was violent and tumultuous." (Doc. 27-2 at ¶ 18.) This statement was allegedly recorded on a video.[4]

On September 20, 2010, Officer Tkac allegedly learned that Ms. Therrien had returned to DHMC on September 12, 2010 with a broken rib and punctured lung. He then began an "internal affairs" investigation. Plaintiff alleges that the interviews conducted pursuant to the investigation were used "primarily, though unsuccessfully, to obtain statements and evidence to use against [Plaintiff] for allegedly assaulting Ms. Therrien between September 10, 2010 and September 12, 2012." *Id.* at ¶ 20.

On September 21-27, 2010, Officer Tkac interviewed several witnesses, including David Nestle, an occupant of Room 131 at the Shady Lawn Motel, who told Officer Tkac that he heard objects bouncing off the shared wall with Room 130 on September 10, 2010. He also stated that he did not hear any yelling, and had not heard any commotion from Room 130 since that night.

Susan Heyes, a second witness, provided Officer Tkac with photos of Ms. Therrien's back. The photos were of the injuries allegedly caused by Officer Adams on September 10, 2010.

Plaintiff alleges that Ralph Diaz spoke to Officer Tkac on September 23, 2010, and claimed that he was present in Room 130 with Plaintiff and Ms. Therrien. Mr. Diaz allegedly stated that Plaintiff did not "lay hands" on Ms. Therrien. *Id.* at ¶ 22.

On September 24, 2010, certain unknown police officers allegedly arrested Plaintiff without a warrant. Plaintiff also alleges that the officers lacked probable cause for the arrest. Officer Cutting allegedly observed Plaintiff's arrest, but Plaintiff provides no additional facts regarding Officer Cutting's proximity to the arrest or his participation

---

[4] Neither party has submitted a video for the court's review.

3

in it. Plaintiff was incarcerated pending payment of a cash bail in the amount of $2,500, and he remained incarcerated until his arraignment in state court on September 27, 2010.

On September 27, 2010, Officer Tkac allegedly interviewed Mr. Diaz who confirmed the statements that he made on September 23, 2010. On the same day, prior to Plaintiff's arraignment, Officer Tkac spoke to Ms. Therrien who allegedly informed him that she did not have a broken rib when she returned to DHMC and that the collapsed lung was caused by a foreign object lodged in her lung, but did not result from conduct of either the Hartford police officers or Plaintiff. Plaintiff further alleges that Ms. Therrien stated that Plaintiff did not grab, push, or assault her in any way.

On September 27, 2010, after Officer Tkac's conversation with Ms. Therrien, Plaintiff was charged with one count of domestic assault pursuant to 13 V.S.A. § 1042.[5] Officer Tkac drafted the affidavit of probable cause in support of the criminal information, which stated that Plaintiff had caused injuries to Ms. Therrien that required hospitalization. Plaintiff alleges that this statement is false. The affidavit allegedly omitted information obtained from Officer Tkac's interviews with Mr. Diaz on September 23 and 27, 2010 and Ms. Therrien on September 27, 2010.

When issuing Plaintiff's conditions of release on September 27, 2010, the state court trial judge was allegedly not aware of the exculpatory information that Mr. Diaz and Ms. Therrien had provided to Officer Tkac. One of Plaintiff's conditions of release was to not have contact with Ms. Therrien. As a result, Ms. Therrien moved out of Room 130 and into another unit at the Shady Lawn Motel. Despite the fact that Ms. Therrien and Plaintiff were not residing together and had no direct contact, Officers Cutting and Roberts, on more than one occasion, allegedly instructed the property manager at the Shady Lawn Motel that Plaintiff could no longer reside there due to his conditions of release. Plaintiff alleges that, in fact, the conditions of release expressly permitted

---

[5] "Any person who attempts to cause or wilfully or recklessly causes bodily injury to a family or household member, or wilfully causes a family or household member to fear imminent serious bodily injury shall be imprisoned not more than 18 months or fined not more than $5,000.00, or both." 13 V.S.A. § 1042.

4

Plaintiff's return to the Shady Lawn Motel and contained no "foot restraints." *Id.* at ¶ 28. On March 31, 2011, the domestic assault charge against Plaintiff was dismissed.

Plaintiff's Amended Complaint asserts "[t]here have been several recent instances of Hartford Police Department officers violating individual constitutional rights." *Id.* at ¶ 29. Defendant cites *State v. Paro*, 2012 VT 53, 54 A.3d 516, *Galloway v. Town of Hartford*, 2012 VT 61, 57 A.3d 684, and *Burwell v. Peyton*, 5:12-cv-166. His Amended Complaint provides no further details regarding these cases.

## II. Legal Analysis and Conclusions.

### A. Standard of Review.

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (internal citation omitted). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

However, "legal conclusions," or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678) (internal quotation marks omitted). To survive a motion to dismiss, a claim must contain factual allegations sufficient "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "While legal conclusions can provide the framework of a claim, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679.

## B. Whether Plaintiff Has Pled Facts Plausibly Stating a Claim of Supervisory Liability Against Officers Cutting and Roberts.

In Count 2, Plaintiff alleges that Officers Cutting and Roberts are liable under 42 U.S.C. § 1983 for damages arising from the alleged *de facto* policies, practices, customs, and usages that resulted in the unconstitutional conduct of Officer Tkac and the unknown police officers. He further alleges that Officers Cutting and Roberts failed to adequately train and supervise Officer Tkac and the unknown police officers, which constituted deliberate indifference to Plaintiff's rights under the Fourth and Fourteenth Amendments. Officers Cutting and Roberts respond that the facts in Plaintiff's Amended Complaint do not plausibly support Plaintiff's allegations of supervisory liability.

"In a § 1983 suit . . . the term 'supervisory liability' is a misnomer. Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Iqbal*, 556 U.S. at 677. A supervisor thus cannot be held liable under § 1983 under a theory of respondeat superior. *See Poe v. Leonard*, 282 F.3d 123, 134 (2d Cir. 2002) ("A supervisor may not be held liable under section 1983 merely because his subordinate committed a constitutional tort."). Instead, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. "Supervisory liability is a concept distinct from municipal liability, and is 'imposed against a supervisory official in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates.'" *Odom v. Matteo*, 772 F. Supp. 2d 377, 403 (D. Conn. 2011) (quoting *Clay v. Conlee*, 815 F.2d 1164, 1170 (8th Cir. 1987)).

Prior to *Iqbal*, the Second Circuit required a plaintiff to allege one of the following for supervisory liability under § 1983:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful

> acts, or (5) the defendant exhibited deliberate indifference to the rights of [persons] by failing to act on information indicating that unconstitutional acts were occurring.

*Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995). Subsequently, in *Iqbal*, the plaintiff argued that "a supervisor's mere knowledge of his subordinate's discriminatory purpose amounts to the supervisor's violating the Constitution." *Iqbal*, 556 U.S. at 677. The Court rejected this argument, finding it inconsistent with the rule applicable to § 1983 cases "that [supervisors] may not be held accountable for the misdeeds of their agents." *Id.* The Second Circuit has recognized that, in light of *Iqbal*, not all of the *Colon* factors may have survived, but it has yet to definitively identify which factors remain applicable. *See Reynolds v. Barrett*, 685 F.3d 193, 205 n.14 (2d Cir. 2012) (observing that "*Iqbal* has, of course, engendered conflict within our Circuit about the continuing vitality of the supervisory liability test set forth in [*Colon*,]" but declining to identify those factors that remain viable and explaining that "the fate of *Colon* is not properly before us").

Some district courts within the Second Circuit have asserted that "[o]nly the first and part of the third *Colon* categories pass *Iqbal*'s muster[.]" *Bellamy v. Mt. Vernon Hosp.*, 2009 WL 1835939, at *1-2 (S.D.N.Y. June 26, 2009); *see also Newton v. City of New York*, 640 F. Supp. 2d 426, 448 (S.D.N.Y. 2009) ("[P]assive failure to train claims pursuant to section 1983 have not survived the Supreme Court's recent decision in *Ashcroft v. Iqbal*."); *Joseph v. Fischer*, 2009 WL 3321011, at *15 (S.D.N.Y. Oct. 8, 2009) ("Plaintiff's claim, based on [defendant's] 'failure to take corrective measure,' is precisely the type of claim *Iqbal* eliminated."). However, other district courts have concluded that "the five *Colon* categories supporting personal liability of supervisors still apply as long as they are consistent with the requirements applicable to the particular constitutional provision alleged to have been violated." *Qasem v. Toro*, 737 F. Supp. 2d 147, 152 (S.D.N.Y. 2010). "Thus . . . where the claim does not require a showing of discriminatory intent, the personal-involvement analysis set forth in *Colon* should still apply." *Alli v. City of New York*, 2012 WL 4887745, at *6 (S.D.N.Y. Oct. 12, 2012); *see also Sash v. United States,* 674 F. Supp. 2d 531, 544 (S.D.N.Y. 2009) ("It was with

intent-based constitutional claims in mind, specifically racial discrimination, that the Supreme Court rejected the argument that 'a supervisor's mere knowledge of his subordinate's discriminatory purpose amounts to the supervisor's violating the Constitution.' Where the constitutional claim does not require a showing of discriminatory intent, but instead relies on the unreasonable conduct or deliberate indifference standards of the Fourth and Eighth Amendments, the personal involvement analysis set forth in *Colon v. Coughlin* may still apply.") (citation omitted). This latter approach appears to reflect the majority view. *See Toliver v. N.Y.C. Dep't of Corr.*, 2012 WL 5426658, at *4 (S.D.N.Y. Oct. 10, 2012) ("[T]he majority view is where 'the constitutional claim does not require a showing of discriminatory intent . . . the personal involvement analysis set forth in *Colon v. Coughlin* may still apply.'") (quoting *Shepherd v. Powers*, 2012 WL 4477241, at *10 (S.D.N.Y. Sept. 27, 2012)). Accordingly, because Plaintiff has not asserted intent-based discrimination claims, but instead relies on claims under the Fourth and Fourteenth Amendment, the court examines the Amended Complaint to determine whether Plaintiff has adequately pled supervisory liability against Officers Cutting and Roberts under any of the five *Colon* factors.

Plaintiff's Amended Complaint sets forth allegations that Officers Cutting and Roberts "had in effect *de facto* policies, practices, customs and usages" that caused the unconstitutional actions of Officer Tkac and the unknown police officers. (Doc. 27-2 at ¶ 38.) He also alleges that Officers Cutting and Roberts failed to train and supervise law enforcement officers, as demonstrated by the alleged previous incidences of police misconduct, and that this failure amounted to deliberate indifference to the rights of Plaintiff. Thus, only the third, fourth, and fifth *Colon* factors must be addressed.

The only factual allegations supporting Plaintiff's customs and policies and deliberate indifference claims are references to the three cases, which allegedly relate to reports of unconstitutional conduct by Hartford police officers. Plaintiff alleges that Officers Cutting and Roberts were aware of these alleged constitutional violations, but failed to rectify or address the ongoing violations, creating a *de facto* policy or custom that such behavior was acceptable.

The timing of events negates Plaintiff's claims. *Burwell v. Peyton*, 5:12-cv-166, was filed, and both *State v. Paro*, 2012 VT 53, 54 A.3d 516, and *Galloway v. Town of Hartford*, 2012 VT 61, 57 A.3d 684, were decided in 2012, almost two years after the events alleged in Plaintiff's Amended Complaint. Therefore, the court cannot reasonably infer that Officers Cutting and Roberts were on notice of these previously alleged constitutional violations such that their inaction could be seen as "deliberate indifference to the possibility that . . . subordinates would violate [Plaintiff's] constitutional rights." *Pettus v. Morgenthau*, 554 F.3d 293, 300 (2d Cir. 2009); *see also Poe*, 282 F.3d at 140 (explaining that a supervisor is "liable for his deliberate indifference to the rights of others by his failure to act on information indicating unconstitutional acts *were occurring*") (emphasis supplied). Nor can the court reasonably infer that the officers sanctioned a policy or custom that allowed for unconstitutional conduct. *See Plair v. City of New York*, 789 F. Supp. 2d 459, 466 (S.D.N.Y. 2011) (finding plaintiff failed to state a claim for supervisory liability when allegations that supervisors were aware of prior reports of misconduct and therefore "allowed the continuation of a policy or custom" of unconstitutional practice were conclusory). On this basis alone, dismissal is warranted with regard to Plaintiff's claims that Officers Cutting and Roberts allowed customs and policies sanctioning unconstitutional conduct or acted with deliberate indifference with respect to addressing prior constitutional violations. *Compare Argueta v. U.S. Immigration & Customs Enforcement*, 643 F.3d 60, 75 (3d Cir. 2011) (concluding that because prior cases alleging misconduct "were filed after at least some of the [misconduct] specifically alleged in the Second Amended Complaint took place," plaintiffs had not plausibly pleaded that defendants "had legally sufficient notice of the underlying unconstitutional conduct of their subordinates"), *with D'Olimpio v. Crisafi*, 718 F. Supp. 2d 340, 347-48 (S.D.N.Y. 2010) (refusing to dismiss claims of supervisory liability when the complaint incorporated a report summarizing an investigation into misconduct that took place prior to the allegedly wrongful conduct against the plaintiff).

Plaintiff further alleges that Officers Cutting and Roberts failed to adequately supervise and train the police officers in Hartford. This alleged failure will satisfy the

9

fourth *Colon* factor if Officers Cutting and Roberts "knew or should have known that there was a high degree of risk that [subordinates] would behave inappropriately . . . but either deliberately or recklessly disregarded that risk by failing to take action that a reasonable officer would find necessary to prevent such a risk[.]" *Poe*, 282 F.3d at 142. Plaintiff refers to cases filed against Hartford as evidence that Officers Cutting and Roberts were on notice of allegedly unlawful conduct of Hartford police officers. These cases, which were not filed or addressed until years after the conduct alleged in this case, do not "nudge[]" Plaintiff's claim of failure to train "across the line from conceivable to plausible[.]" *Twombly*, 550 U.S. at 547. Beyond Plaintiff's references to these cases, which could not have put Officers Cutting and Roberts on notice, Plaintiff has not asserted any other facts supporting his claim that Officers Cutting and Roberts failed to supervise and train.

With respect to Officer Cutting, Plaintiff further alleges that Officer Cutting "observed" at least one of the constitutional violations when the unknown police officers allegedly arrested Plaintiff without a warrant and without probable cause. (Doc. 27-2 at ¶ 23.) Plaintiff asserts that Officer Cutting's presence and failure to "object to or correct the conduct" effectively condoned the violations. (Doc. 24 at 5.) At this stage in the proceeding, Plaintiff's singular allegation that Officer Cutting "observed" Plaintiff's allegedly warrantless arrest without objection does not plausibly lead to an inference that Officer Cutting's supervision of the unknown officers who arrested Plaintiff was grossly negligent.[6] Plaintiff has not alleged facts that, taken as true, would establish that Officer

---

[6] Officer Cutting's mere presence does not satisfy the first *Colon* factor of directly participating in the constitutional violation. *See Colon*, 58 F.3d at 873. "'[D]irect participation' as a basis of liability in this context requires intentional participation in the conduct constituting a violation of the victim's rights by one who knew the facts rendering it illegal." *Provost v. City of Newburgh*, 262 F.3d 146, 155 (2d Cir. 2001); *see also Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002) (explaining that "[s]upervisory liability under § 1983 does not attach when premised on a mere failure to act; it 'must be based on active unconstitutional behavior[,]'" the court found no liability for police chief who arrived for only the final moments of the arrest, but did not participate in the arrest itself) (citation omitted); *Rider v. Yates*, 2010 WL 2465402, at *4 (E.D. Cal. June 15, 2010) (granting motion to dismiss even though defendant was present during

Cutting was on notice that Hartford police officers had committed prior unconstitutional conduct and that Officer Cutting's failure to respond was therefore grossly negligent, as was the case in *Johnson v. Newburgh Enlarged School District*, 239 F.3d 246, 255 (2d Cir. 2001) (concluding allegations of gross negligence were plausible when plaintiff alleged that, at the time plaintiff was assaulted by his teacher, supervisors knew that the teacher had assaulted other students on four previous occasions). Moreover, the allegation that Officer Cutting "observed" the arrest, without any additional factual allegations, does not make it plausible that Officer Cutting observed plainly unconstitutional conduct and that his failure to stop that conduct was therefore grossly negligent. *Cf. Rosales v. Fischer*, 2009 WL 928260, at *9 (S.D.N.Y. Mar. 31, 2009) (finding complaint adequately stated claim for supervisory liability when it alleged that supervisor was both present and complicit in the incident that included "repeatedly knocking Plaintiff's head against the cell wall . . . when Plaintiff was handcuffed and unresisting").

In sum, the court finds that Plaintiff has not plausibly stated a claim that Officers Cutting and Roberts employed *de facto* policies and customs resulting in unconstitutional conduct or acted with deliberate indifference in failing to act on reports of unconstitutional incidents. The court thus GRANTS Officer Cutting's and Roberts's motions to dismiss these claims. With respect to Plaintiff's claims of failure to adequately train and supervise, because Plaintiff has not plausibly alleged that Officer Cutting or Officer Roberts acted with gross negligence or deliberate indifference to Defendant's constitutional rights, the court also GRANTS the motion to dismiss with respect to this claim. With respect to Plaintiff's additional claim that Officer Cutting observed his arrest and therefore condoned the alleged unconstitutional conduct, Plaintiff has not plausibly alleged that Officer Cutting acted with gross negligence in supervising the unknown police officers who arrested Plaintiff. Accordingly, the court GRANTS the motion to dismiss with respect to this claim as well.

---

discussions of allegedly unconstitutional conduct because "[t]here are no facts alleged indicating direct participation by [defendant]").

### C. Whether Plaintiff Has Adequately Alleged that Hartford Employed Policies, Practices, and Customs Resulting in Unconstitutional Conduct and Failed to Adequately Train and Supervise Police Officers.

Plaintiff alleges in Count 2 that Hartford is liable for employing policies, practices, customs, and usages that caused the unconstitutional conduct of Officer Tkac and the unknown police officers. He further asserts that Hartford failed to adequately train and supervise Officer Tkac and the unknown police officers, amounting to deliberate indifference to Plaintiff's right to be free from unreasonable seizures under the Fourth and Fourteenth Amendments.

"[A] municipality may not be held liable [under 42 U.S.C. § 1983] solely on the basis of *respondeat superior*." *Powell v. Gardner*, 891 F.2d 1039, 1045 (2d Cir. 1989); *see also Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 n.58 (1978) ("[T]he mere right to control without any control or direction having been exercised and without any failure to supervise is not enough to support § 1983 liability."). Under § 1983, "a municipality may be held liable for a constitutional violation if the plaintiff can prove that the violations resulted from a municipality's customs or policies." *Smith v. Edwards*, 175 F.3d 99, 107 (2d Cir. 1999). Thus, for a municipality to be held liable under § 1983 for the unconstitutional actions of its employees, "a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007). However, a custom or practice need not be embodied by rule, it can be the basis for a § 1983 action if the "practice . . . 'was so persistent or widespread as to constitute a custom or usage with the force of law.'" *Green v. City of New York*, 465 F.3d 65, 80 (2d Cir. 2006) (quoting *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 226 (2d Cir. 2004)). In fact, "*Monell*'s policy or custom requirement is satisfied where a local government is faced with a pattern of misconduct and does nothing, compelling the conclusion that the local government has acquiesced in or tacitly authorized its subordinates' unlawful actions." *Reynolds v. Giuliani*, 506 F.3d 183, 192 (2d Cir. 2007).

"The failure to train or supervise city employees may constitute an official policy or custom if the failure amounts to 'deliberate indifference' to the rights of those with whom the city employees interact." *Wray*, 490 F.3d at 195; *see also Okin v. Vill. of Cornwall-on-Hudson Police Dep't*, 577 F.3d 415, 440 (2d Cir. 2009) ("Municipal liability may also be premised on a failure to train employees when inadequate training 'reflects deliberate indifference to . . . constitutional rights.'") (quoting *City of Canton v. Harris*, 489 U.S. 378, 392 (1989)). However, "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 131 S. Ct. 1350, 1359 (2011).

Deliberate indifference may be found when:

(1) " . . . a policymaker knows 'to a moral certainty' that her employees will confront a given situation"; (2) "that the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation"; and (3) "that the wrong choice by the . . . employee will frequently cause the deprivation of a citizen's constitutional rights."

*Id.* (quoting *Walker v. City of New York*, 974 F.2d 293, 297-98 (2d Cir. 1992)). Deliberate indifference requires Plaintiff to allege facts that, if proved, demonstrate that "municipal policymakers made a 'deliberate choice . . . from among various alternatives' not to fully train employees." *Robischung-Walsh v. Nassau Cnty. Police Dep't*, 699 F. Supp. 2d 563, 566 (E.D.N.Y. 2010) (citations omitted).

Hartford cites *Amnesty America v. Town of West Hartford*, 361 F.3d 113 (2d Cir. 2004), for the proposition that "plaintiff [must] identify a specific deficiency in the city's training program and establish that that deficiency is 'closely related to the ultimate injury,' such that it 'actually caused' the constitutional deprivation." *Id.* at 129 (quoting *Canton*, 489 U.S. at 390-91). In *Amnesty*, which was decided on a motion for summary judgment, the Second Circuit noted that "[i]t is unlikely that a plaintiff would have information about the city's training programs or about the cause of the misconduct at the pleading stage, and therefore need only plead that the city's failure to train caused the constitutional violation." *Id.* at 130 n.10. *Amnesty* was decided prior to *Iqbal* and

13

*Twombly*, after which many district courts within the Second Circuit, in deciding motions to dismiss, "have generally required that plaintiffs provide more than a simple recitation of their theory of [municipal] liability[.]" *Simms v. City of New York*, 2011 WL 4543051, at *2 n.3 (E.D.N.Y. Sept. 28, 2011) (collecting cases), *aff'd*, 480 F. App'x 627 (2d Cir. 2012). Likewise, this court concludes that a plaintiff pleading failure to train must provide more than "a simple recitation" of the theory of municipal liability. *See Iqbal*, 556 U.S. at 679 (requiring "well-pleaded factual allegations" to "plausibly give rise to an entitlement to relief"); *Twombly*, 550 U.S. at 555-56 (same); *see also Simms*, 2011 WL 4543051, at *2 n.3 (concluding that *Amnesty*'s pronouncement that a plaintiff "need only plead that the city's failure to train caused the constitutional violation" was dicta that cannot survive the Supreme Court's subsequent and unequivocal guidance in both *Iqbal* and *Twombly*).

To survive a motion to dismiss, Plaintiff's allegations must also plausibly support a conclusion that either (1) Hartford employed *de facto* customs and policies that sanctioned the unconstitutional actions of its police officers; or (2) that Hartford acted with deliberate indifference in failing to adequately train its officers. While Plaintiff alleges at least two reported incidents of alleged unconstitutional actions by Hartford police officers,[7] these reports of misconduct were made after the events of which Plaintiff complains. Therefore, it is not possible that the conduct alleged in these reports could have put policymakers on notice of a developing *de facto* policy.

In *Walker*, the Second Circuit held that, "[w]hile it is reasonable for city policymakers to assume their employees possess common sense, where there is a history of conduct rendering this assumption untenable, city policymakers may display deliberate indifference by doing so." *Walker*, 974 F.2d at 300; *see also Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991) (explaining that a policy may be inferred by

---

[7] The limited number of prior incidents may, itself, render Plaintiff's allegations insufficient to plausibly show a policy or custom. *See Giaccio v. City of New York*, 308 F. App'x 470, 472 (2d Cir. 2009) (finding that allegations of, at most, four prior incidents of misconduct "falls far short of establishing a practice that is 'so persistent or widespread' as to justify the imposition of municipal liability").

14

"evidence that the municipality had notice of but repeatedly failed to make any meaningful investigation into charges that police officers had used excessive force in violation of the complainants' civil rights"); *Graham v. Cnty. of Erie*, 2012 WL 1980609, at *6 (W.D.N.Y. May 31, 2012) (refusing to dismiss complaint that alleges "[t]he County and its supervisory employees were made aware of [similar] allegations from the Justice Department in its June of 2009 'findings letter,' which was received well before the occurrence of the events alleged here"). This case is distinguishable from *Walker* and it progeny because, although the Amended Complaint alleges two instances of misconduct, no misconduct had yet been found and thus these incidents did not put Hartford and its policymakers on notice in advance of the misconduct alleged by Plaintiff. *See Simms v. City of New York*, 480 F. App'x 627, 630 (2d Cir. 2012) (affirming motion to dismiss claims against the city for failure to train, noting that other cases alleging prior misconduct "establish . . . that other individuals have plausibly alleged that they experienced similar violations of their constitutional rights . . . not that those violations actually occurred").

Plaintiff's conclusory allegations that Hartford has failed to train its police officers do not constitute "facts which demonstrate that the need for training was obvious such as there were proof of repeated complaints of similar civil rights violations followed by no meaningful attempt on the part of [Hartford] to investigate or to forestall such incidents." *Zalaski v. City of Hartford*, 2011 WL 6130770, at *7 (D. Conn. Dec. 8, 2011). Plaintiff has thus failed to adequately allege that the constitutional violations arose from a *de facto* policy or custom or that Hartford acted with deliberate indifference in failing to adequately train its police officers. Accordingly, Hartford's motion to dismiss Count 2 is GRANTED.

### D. Whether Hartford Is Entitled to Municipal Immunity with Respect to Plaintiff's State Law Negligence Claim.

Finally, Hartford moves to dismiss Plaintiff's state law negligence claim against it, set forth in Count 7. Plaintiff alleges that Hartford breached its obligation to ensure that law enforcement officers perform their duties in a lawful manner and do not violate the

constitutional rights of others. Hartford asserts that it is entitled to municipal immunity for this claim. Plaintiff counters that Hartford is not entitled to municipal immunity because "the establishment and supervision of a police force and training and discipline oversight is a proprietary function," a function to which municipal immunity does not attach. (Doc. 23 at 4-5.) Plaintiff further asserts that "'good faith' is required in order for a municipality to enjoy immunity" and that Defendants have not acted in good faith. (Doc. 23 at 6.)

The court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a) and is thus required to apply Vermont law to substantive issues. *See Promisel v. First Am. Artificial Flowers, Inc.*, 943 F.2d 251, 257 (2d Cir. 1991) ("In applying pendent jurisdiction, federal courts are bound to apply state substantive law to the state claim."); *see also Baker v. Coughlin*, 77 F.3d 12, 15 (2d Cir. 1996) (allowing defendants to invoke state statute conferring immunity when analyzing pendant state law claims brought in federal court).

Under Vermont law, municipalities are "liable only where the negligent act arises out of a duty that is proprietary in nature as opposed to governmental." *McMurphy v. State*, 757 A.2d 1043, 1047 (Vt. 2000) (quoting *Hillerby v. Town of Colchester*, 706 A.2d 446, 447 (Vt. 1997)) (internal quotation marks omitted). The rationale for distinguishing between these two municipal functions is that "municipalities perform governmental responsibilities for the general public as instrumentalities of the state," but "they conduct proprietary activities only for the benefit of the municipality and its residents." *Hillerby*, 706 A.2d at 447.

The Vermont Supreme Court recently addressed this distinction in *Sobel v. City of Rutland*, 2012 VT 84, 60 A.3d 625, explaining that:

> Governmental functions are those performed when a municipality "exercise[s] those powers and functions specifically authorized by the Legislature, as well as those functions that may be fairly and necessarily implied or that are incident or subordinate to the express powers." Proprietary activities, on the other hand, are, essentially, commercial activities performed by a municipality in its corporate capacity, for the

16

benefit of the municipality and its residents, and unrelated to its "legally authorized activity."

*Id.* at ¶ 14, 60 A.3d at 630 (internal citations omitted). The *Sobel* court concluded that tax estimates performed by a tax assessor, while not required for the performance of statutory duties, are nonetheless governmental functions because they are "ancillary and related to governmental functions." *Id.* at ¶ 16, 60 A.3d at 630. Moreover, the court noted that "[m]unicipalities derive no income or similar commercial return from estimating taxes." *Id.*

Courts in Vermont have consistently found that police work is a governmental function. *See Franklin Cnty. Sheriff's Office v. St. Albans City Police Dep't*, 2012 VT 62, ¶ 17, 58 A.3d 207, 213-14 ("[T]he provision of police services in Vermont occurs outside the realm of commerce because it involves no interchange of goods or commodities on the open market. It is a governmental function provided only by governmental entities for the benefit of the public."); *Carty's Adm'r v. Vill. of Winooski*, 62 A. 45, 46 (Vt. 1905) ("One of the powers of government inherent in every sovereignty is the governing and regulating of its internal police. . . . [T]his power may be delegated by a state to municipal corporations, to be exercised within their corporate limits; but, whether the power be so delegated or otherwise, it is a governmental function, founded upon the duty of the state to protect the public safety, the public health, and the public morals."); *see also MacLeod v. Town of Brattleboro*, 2012 WL 5949787, at *21 (D. Vt. Nov. 28, 2012) (explaining that "[m]ost courts . . . have concluded that training police officers and evaluating their conduct both fall within the governmental function of police work"); *Treon v. Whipple*, 212 F. Supp. 2d 285, 290 (D. Vt. 2002) (finding city was entitled to immunity with respect to claim for failing to train and supervise police officers); *Kent v. Katz*, 146 F. Supp. 2d 450, 458-59 (D. Vt. 2001) (upholding the categorization of police work as a governmental function where plaintiff alleged the municipality failed to properly train and supervise its officers); *Decker v. Fish*, 126 F. Supp. 2d 342, 346 (D. Vt. 2000) ("[T]here can be little question that police work is a

quintessential governmental function.") (citing *Clain v. City of Burlington*, 202 F.2d 532, 533 (2d Cir. 1953)).

Plaintiff cites *Kelly v. Town of Brattleboro*, 641 A.2d 345 (Vt. 1993) and *Fuller v. City of Rutland*, 171 A.2d 58 (Vt. 1961), and asks the court to find that "the establishment and supervision of a police force and training and discipline oversight is a propriety function[.]" (Doc. 23 at 5.) Analogizing the establishment, supervision, and training of a police force to the reinstallation of a water service pipe, *see Kelly*, 641 A.2d at 346, or the building and maintenance of sewers, *see Fuller*, 171 A.2d at 59, is unhelpful in light of the ample precedent that police services, including the training of officers, is governmental. The parties do not dispute that Officer Tkac and the unknown police officers were performing police services when the allegedly unconstitutional activities occurred. As a result, Hartford's role in training and supervising officers in the performance of these activities was a governmental function. *See MacLeod*, 2012 WL 5949787 at *22 ("[E]ven if hiring, training and supervising police officers were not themselves governmental functions, they are each necessary to carrying out the governmental function of police work, and they are not performed for income or other commercial gain. Thus, they are, at a minimum, 'reasonably related to the governmental function of [police work].'") (citation omitted).

Plaintiff further asserts that "[a] finding of good faith is necessary in order for immunity to protect a municipality from liability." (Doc. 23 at 5.) In making this argument, Plaintiff conflates the requirements for state law qualified immunity for government officers and municipal immunity. In *Murray v. White*, 587 A.2d 975 (Vt. 1991), the only case cited by Plaintiff for this good faith requirement, the court analyzed whether a public official is entitled to qualified immunity. *Id.* at 978 ("Qualified immunity attaches to public officials who are . . . acting in good faith[.]").

Because training and supervising police officers are governmental functions, the court hereby GRANTS Hartford's motion to dismiss Plaintiff's state law claim against it for negligence, as set forth in Count 7.

18

## CONCLUSION

For the reasons stated above, the court GRANTS the motion to dismiss Plaintiff's claims set forth in Count 2 against Officer Cutting and Roberts. The court also GRANTS Hartford's motion to dismiss Plaintiff's § 1983 claims for municipal liability in Count 2, and GRANTS Hartford's motion to dismiss Plaintiff's state law negligence claim in Count 7 as it applies to Hartford.
SO ORDERED.

Dated at Rutland, in the District of Vermont, this __8th__ day of April, 2013.

Christina Reiss, Chief Judge
United States District Court